UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CRIMINAL ACTION NO. 09-96-DCR

UNITED STATES OF AMERICA,                                                PLAINTIFF,

V.                          **MAGISTRATE JUDGE'S REPORT
                              & RECOMMENDATION**

STEPHANIE MORALES,                                                       DEFENDANT.

*** *** *** ***

This matter is before the Court on the Defendant's *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. [R. 79]. Consistent with local practice, this matter has been referred to the undersigned for preparation of a Report and Recommendation. The matter having been fully briefed, and after determining that an evidentiary hearing is not necessary, it is recommended that the Defendant's motion for post-conviction relief be denied.

## I.   FACTUAL & PROCEDURAL BACKGROUND

On or about August 6, 2009, Tyrone Tanks robbed a liquor store in Boone County, Kentucky. [R. 58, *Plea Agreement* at 2]. Tanks entered the store while Stephanie Morales waited outside in a vehicle registered to Tanks. [Id.]. Brandishing a firearm, Tanks stole $6,874 in cash from the store owner. Tanks then fled the scene in the waiting vehicle, which was driven by Morales. [Id.]. Shortly after the robbery, Morales and Tanks were apprehended. A search of the vehicle uncovered both the stolen money and the firearm used by Tanks. [Id.].

Following their arrest, Morales and Tanks were charged with aiding and abetting one another in the armed robbery of a business affecting interstate commerce in violation of 18 U.S.C. § 1951

(the "Hobbs Act"). [R. 1, *Indictment* at 1].  They were also charged with aiding and abetting each other in the use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).  [Id. at 2].  Morales was further alleged to have violated 18 U.S.C. § 922(g)(1) by being a felon in possession of a firearm. [Id. at 2-3].

On March 29, 2010, Morales pled guilty to the robbery and § 924(c) counts. [R. 43].  A sentencing hearing was held on July 12, 2010, and Morales was sentenced to 30 months imprisonment on the robbery offense and 42 months for the firearm offense,  with the sentences to be served consecutively for a total of 72 months imprisonment. [R. 59].  Morales did not file a direct appeal, but on February 16, 2011, she filed this post-conviction motion seeking to  vacate, set aside, or correct her sentence. [R. 79].  In her motion, Morales contends that her attorney performed ineffectively by (1) failing to file a direct appeal, (2) failing to disclose an exculpatory affidavit provided by the co-defendant Tanks, (3) advising Morales to plead guilty, and (4) failing to object to the calculation of her criminal history category.  Morales also claims that the Court failed to provide her an opportunity to object to the sentence imposed.

## II. WAIVER OF THE RIGHT TO COLLATERAL ATTACK

Before proceeding to the merits of Defendant's claims, the Court must address the fact that her plea agreement contains a waiver of her right to file a motion for post-conviction relief.  In the plea agreement, Morales agreed to waive "the right to appeal and the right to attack collaterally the guilty plea, conviction, and any sentence within or below the advisory Guideline range as finally determined by the Court." [R. 58 at 3].  A defendant is generally bound by such a waiver so long as it is made knowingly, intelligently, and voluntarily. United States v. Fleming, 239 F.3d 761, 763 - 64 (6th Cir. 2001);  Watson v. United States, 165 F.3d 486, 489 (6th Cir. 1999) ("a defendant's

2

informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars

such relief.").  To determine whether the waiver is binding, "the proper inquiry under Rule 11 is

whether the defendant was informed of and understood the terms of the plea agreement." United

States v. Sharp, 442 F.3d 946, 951 (6th Cir.2006); see also United States v. Broom, 207 Fed. Appx.

565, 569 (6th Cir.2006)("Rule 11(b)(1)(N) does not necessitate a district court to specifically ask

a defendant whether he or she understands the terms of the appellate waiver provision. It only

requires a court to 'determine' that the defendant understands the terms of such provision.").  Either

the district judge or the prosecutor may address the components of the waiver provision in open

court, so long as the district judge determines that the defendant understands the terms of the waiver.

See Sharp, 442 F.3d at 950-51.

      The record demonstrates that Defendant's waiver was made both knowingly and voluntarily.

The waiver provision of her plea agreement was addressed a number of times throughout the

rearraignment proceedings.  First, in summarizing the plea agreement, the prosecutor explained that

Morales agreed to waive "her right to appeal and the right to attack collaterally the guilty plea,

conviction and any sentence that is within or below the advisory guideline range as finally

determined by the Court." [R. 84, *Rearraignment Transcript* at 9].  Morales stated that the plea

agreement was accurately summarized and that she understood its terms. [Id.].  The Court then

verified that Morales understood the implications of the collateral attack waiver:

> THE COURT:      All right. Let me take just a moment to review the waiver
> language that's contained in your plea agreement. Now, it's
> not unusual to have this language in a plea agreement, but
> anytime it's present I do need to review it with you. In your
> plea agreement, the language is in paragraph 8 that I would
> like to review, and it provides that you waive the right to
> appeal and the right to attack collaterally the guilty plea,
> conviction and any sentence within or below the advisory

3

|                | guideline range as finally determined by the Court. Do you understand that you're waiving or giving up those rights? |
|----------------|---------------------------------------------------------------------------------------------------------------------|
| MORALES:       | Yes, sir.                                                                                                           |
| THE COURT:     | Now, do you understand that when you give up the right to collaterally attack something, that means you're giving up the right to file a separate lawsuit to challenge it? You understand that? |
| MORALES:       | Yes.                                                                                                               |

[Id. at 14-15].

Morales does not appear to dispute that she was informed of and understood the terms of the waiver provision. Accordingly, her waiver of the right to collateral attack is binding and would ordinarily preclude the Court from reviewing her § 2255 motion. Watson, 165 F.3d at 489. Despite the binding waiver, claims that "go to the very validity of [the] guilty plea" are nevertheless cognizable in a habeas corpus motion. In re Acosta, 480 F.3d 421, 422 (6th Cir. 2007). A guilty plea is valid only if it is made knowingly and voluntarily. Parke v. Raley, 506 U.S. 20, 28 (1992). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Id. at 29 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). Accordingly, any claims challenging either the voluntariness or intelligence of Morales's guilty plea must be addressed by the Court.

Construing her motion liberally, Morales makes two claims that arguably go to the validity of her guilty plea. Specifically, Morales claims that her attorney performed ineffectively by advising her to plead guilty and by failing to disclose an exculpatory affidavit from the co-defendant. A guilty plea may be found involuntary or unintelligent if it was induced by the ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 56 (1985). A "defendant who pleads guilty upon the

4

advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the" range of competence demanded of attorneys in criminal cases.  Id. at 56-57 (quotations omitted).  The validity of a plea may be challenged due to a lack of reasonably competent advice which negates the voluntary and intelligent character of the guilty plea. See Bradshaw v. Stumpf, 545 U.S. 175, 186 (2005).  For the reasons discussed below, however, Morales's claims of ineffective assistance of counsel do not undermine the voluntary and intelligent nature of her guilty plea.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

A criminal defendant is entitled to effective representation by counsel at all critical stages of the proceedings, including plea negotiations. See King v. Bobby, 433 F.3d 483, 490 (6th Cir. 2006).  To prevail on a claim of ineffective assistance of counsel based on counsel's advice during the plea process, a defendant must establish two elements: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the defendant would have pleaded differently.  Griffin v. United States, 330 F.3d 733, 736-37 (6th Cir. 2003) (citations omitted).  With respect to the first element, the proper measure of attorney performance is simply reasonableness under prevailing professional norms.   Strickland v. Washington, 466 U.S. 668, 688 (1984).  Under the second element, the defendant must show merely that there is a reasonable probability that, but for her attorney's error, she would not have pled guilty and insisted on going to trial.  Griffin, 330 F.3d at 737.  "Defendants alleging the ineffective assistance of counsel bear 'a heavy burden of proof.'"  Pough v. United States, 442 F.3d 959, 966 (6th Cir. 2006) (citing Whiting v Burt, 395 F.3d 602, 617 (6th Cir. 2005)).

## A.    Failure to Disclose Co-Defendant's Affidavit

Morales first claims that she would not have pled guilty had her attorney disclosed to her the fact that Tyrone Tanks had sworn an affidavit exonerating Morales of criminal responsibility. [R. 79-1 at 4]. Morales alleges that in February of 2010, Tanks provided his attorney with a sworn statement relieving Morales of any responsibility for the robbery. Morales believes that had her attorney disclosed this affidavit, the criminal charges would have been dropped, and Morales would not have pled guilty. Morales further states that she pled guilty based on counsel's erroneous advice that Tanks was going to implicate her in the crime. [R. 79-2, *Affidavit of Stephanie Morales*].

In support of this claim, Morales has provided an affidavit from Tyrone Tanks dated December 21, 2010. [R. 79-3]. In this affidavit, Tanks states that in February 2010, he provided his attorney with an affidavit in which he exonerated "Morales from being involved, or having any knowledge about what occurred on August 6, 2009, the day of the arrest." Tanks also stated that Morales did not know a gun was inside his car. [Id.]. Tanks then claims that on or about March 28, 2010, his attorney visited him in jail and stated that he had given the affidavit to Morales's attorney. [Id.]. Tanks finally states that he remains willing to testify to the same facts he provided in the February 2010 affidavit. [Id.].

At first blush, it would appear that counsel's alleged failure to disclose the existence of such a document would have deprived the Defendant of information necessary to make an informed plea. Three problems, however, undermine Morales's claim. First, the record contradicts Tanks's claim that he provided an exculpatory affidavit for Morales in February of 2010. Second, even if Tanks had executed a sworn statement as alleged, there is no evidence that Morales's attorney ever received it. Finally, Morales has not detailed why the contents of this affidavit would have caused

6

her to reject the plea agreement and risk going to trial.

Regarding the alleged February 2010 affidavit, the Defendant's attorney, Wende Cross, provided an affidavit claiming that she never received any statement from Tanks's attorney exonerating Morales. [R. 88-1 at 2]. Specifically, Cross states that

> Ms. Morales contends that I failed to provide an affidavit of her co-defendant exonerating her in the instant offense. This issue was discussed with Ms. Morales initially in the representation. Because her co-defendant was represented by counsel and incarcerated, I was prohibited from contacting him in any regard. It was explained to Ms. Morales that I did contact her co-defendant's counsel, who advised that his client may or may not provide an affidavit on her behalf. Nothing else further developed in this regard.

[Id.]. Obviously, Morales's attorney could not have performed ineffectively by failing to disclose a document she never possessed. The only contrary evidence offered by Morales is an inadmissible hearsay statement from Tanks alleging that his attorney told him the affidavit had been given to Morales's attorney. [R. 79-3, *December 21, 2010 Affidavit of Tyrone Tanks*]. Because Morales can point to no evidence suggesting her attorney actually received Tanks's alleged statement, the Court credits Cross's affidavit. See, e.g., Cummings v. United States, 84 Fed. Appx. 603, 605 (6th Cir. 2003) (district court did not commit clear error by crediting defense counsel's affidavit).

The Court further finds that Tanks's December 2010 affidavit is entitled to little credit. First, the Court is suspicious of his claim that he provided a sworn statement in February 2010. If, as he now claims, Tanks was willing to admit guilt and exonerate Morales, he would not have waited until after Morales pled guilty to enter into his own plea agreement. If Tanks truly sought to exonerate Morales, he would have taken responsibility for his crimes before she pled guilty. Other than his post-conviction statements, there is no evidence that Tanks was actually willing to admit his own guilt and plead guilty in order to exonerate Morales. In fact, just days after Morales filed a motion

for rearraignment on March 17, 2010, Tanks filed two motions to suppress, one of which was *pro se*. [Rs. 28, 34].  Tanks's past actions are inconsistent with his claim that he was actively seeking to exonerate Morales in February of 2010.

Second, the Court gives little weight to Tanks's present willingness to testify on Morales's behalf.  "[P]ostconviction statements by codefendants are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences."  Allen v. Yukins, 366 F.3d 396, 405 (6th Cir. 2004). Here, Tanks had already pled guilty and was sentenced several months before he provided Morales with the December 2010 affidavit.  That he is now willing to testify to her innocence bears little weight in the Court's analysis.  Having already been convicted and sentenced, Tanks risks no further consequences by claiming full responsibility for the crimes and exonerating Morales.  See In re Byrd, 269 F.3d 561, 574 (6th Cir. 2001) (finding that a co-defendant's affidavit exonerating petitioner was "highly suspect" because it was made six years after the co-defendant had been sentenced); Drew v. Scott, 28 F.3d 460, 463 (5th Cir.1994) ("we still have little confidence in [the co-defendant's] postsentencing truth experience because he had nothing whatsoever to lose by incriminating himself after receiving a 60–year sentence.").

Finally, even if Morales could prove (1) that Tanks had executed a sworn statement in February 2010 exonerating her, and (2) that this statement was actually provided to Ms. Cross, she has failed to demonstrate the requisite prejudice.  To demonstrate a reasonable probability that she would have pleaded differently, Morales "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  Pilla v. United States, 668 F.3d 368, 373 (6th Cir. 2012) (quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)).  As Tanks now indicates,  his February 2010 affidavit would have only stated that Morales had no prior knowledge

of his intention to rob the liquor store and no prior knowledge that he had a gun in the vehicle. [R. 79-3, *December 21, 2010 Affidavit of Tyrone Tanks*].  Morales's conviction does not stem from any prior knowledge she may have had of Tanks's plan, but rather from the fact that once the armed robbery was set in motion by Tanks, Morales became a willing participant.  She admitted as much during the rearraignment proceedings:

| | |
|---|---|
| THE COURT: | Can you tell me, in your own words, what it was that you did to be guilty of those charges? |
| DEFENDANT: | Yes, sir. On the morning of the day in question, me and Tyrone Tanks had left my house, and we were going to the Argosy. On the way, he had asked me to stop at Collett's and get a bag of chips. I realized once we got there and I pulled up, he went in the glove box, he got some gloves out and he reached for a sweater, that he was going to rob the place. And I stayed there. I didn't get out of the car. And I was driving. |
| THE COURT: | All right. Did you anticipate at that time that you would be, essentially, the get-away driver for the robbery? |
| DEFENDANT: | Once he got out of the car, yes, sir. |
| THE COURT: | All right. And you understood that he had this firearm? Is that the gun that's described in Count 2 of the indictment? |
| DEFENDANT: | Yes, sir. |

[R. 84 at 19-20].

Morales claims that she would not have pled guilty because Tanks's affidavit would have exonerated her.  Tanks's alleged affidavit, however, would have done nothing to change the facts admitted by Morales under oath.  For example, there is no indication that Tanks had stated that he used force or threatened to use force against Morales in order to coerce her into driving the get-away vehicle. In light of the fact that Tanks's affidavit would not have actually exonerated her of the charges, Morales has not convinced the Court that her decision to reject the plea agreement would

have been rational under the circumstances.

The Court further finds that an evidentiary hearing is not necessary to resolve this claim. Section 2255 directs the Court to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Thus, to receive a hearing, a defendant must make allegations that raise at least some possibility of relief. "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)). An evidentiary hearing is also not required where "there is nothing in the record to indicate that [the] defendant would [be] able to prove his allegations at an evidentiary hearing." Amr v. United States, 280 Fed. Appx. 480, 485 (6th Cir. 2008).

Other than the testimony of Tyrone Tanks and Wende Cross, Morales has not identified any additional evidence she could present at an evidentiary hearing to prove her claim. As the Court has already discussed, both of these individuals have already submitted affidavits. In light of the fact that Tanks's affidavit contains inadmissible hearsay, is inherently suspect and contradicted by the record, there is no reason to believe that Morales would be able to prove her allegations at an evidentiary hearing. Counsel states that she never received a statement from Tanks or his attorney exonerating Morales, and there is nothing to suggest that Morales could prove this statement false at an evidentiary hearing.

**B.      Improperly Advising Defendant to Plead Guilty**

Morales also claims that her attorney performed ineffectively by advising her to plead guilty to the § 924(c) charge. Morales argues that her attorney should not have recommended a guilty plea

on that count because there was no evidence showing that Morales knew Tanks possessed a firearm or had one in his vehicle. [R. 79-1 at 6]. "[E]ven when there is a bona fide defense, counsel may still advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances." United States v. Cronic, 466 U.S. 648, 657 n. 19 (1984). Morales has failed to demonstrate that her attorney's advice fell outside the range of reasonable competence.

Defendant's claim that she did not know Tanks possessed a firearm when he robbed the liquor store is contradicted by her previous sworn testimony in open court. During the rearraignment proceedings, the Court asked Morales whether she understood that Tanks had a firearm. She responded affirmatively. [R. 84 at 19-20]. "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Where the Court follows the procedures outlined in Rule 11 "the defendant is bound by his statements in response to that court's inquiry." Baker v. United States, 781 F.2d 85, 90 (6th Cir. 1986) (quoting Moore v. Estelle, 526 F.2d 690, 696-97 (5th Cir. 1976)).

To sustain a conviction under § 924(c) for aiding and abetting:

> The government must prove that the defendant, as the accomplice, associated and participated in the use of the firearm in connection with the underlying ... crime. The government must show that the defendant was a participant rather than merely a knowing spectator, that his presence at the scene of the crime was not surplusage, and that the crime would not have transpired without him. This can be satisfied if the accomplice knows that the principal is armed and acts with the intent to assist or influence the commission of the underlying predicate crime.

United States v. Franklin, 415 F.3d 537, 554 (6th Cir. 2005) (quoting Rattigan v. United States, 151 F.3d 551, 558 (6th Cir. 1998)). Here, Morales admitted in open court that she understood Tanks had a firearm, and she admitted that she was the get-away driver for the robbery. [R. 84 at 19-20]. By assuming the role of get-away driver, Morales acted with the intent to assist the commission of the

11

underlying crime.  A number of cases have recognized that a get-away driver aids and abets a §

924(c) offense when she knows the co-defendant has a firearm and the co-defendant commits armed

robbery.  See United States v. Hintz, 267 Fed. Appx. 407, 411-12 (6th Cir. 2008); United States v.

McNeil, 106 Fed. Appx. 294, 300 (6th Cir. 2004); United States v. Mann, 7 Fed. Appx. 424, 426

(6th Cir. 2001); Anthony v. United States, 264 F.Supp.2d 596, 601-02 (N.D. Ohio 2003).  In light

of the Defendant's own admissions under oath, the Court cannot say that counsel's advice to plead

guilty fell outside the range of reasonable competence.

### IV.  FAILURE TO FILE A DIRECT APPEAL

Morales also claims that her attorney performed ineffectively by failing to file a direct

appeal.  Morales contends that she directed her attorney to appeal because she received a sentence

higher than the 54 months allegedly promised by the prosecution. [R. 79-1 at 2].  Citing Ludwig v.

United States, Morales properly notes "that the failure to perfect a direct appeal, in derogation of

a defendant's actual request, is a per se violation of the Sixth Amendment." Ludwig, 162 F.3d 456,

459 (6th Cir. 1998); see also Roe v. Flores-Ortega, 528 U.S. 470, 476 (2000) (an attorney who

disregards specific instructions from the defendant to file a notice of appeal acts in a professionally

unreasonable manner).  As previously discussed, however, Morales executed a valid waiver of the

right to appeal and collaterally attack any sentence within or below the guideline range.  Since

Morales was ultimately sentenced below the guideline range, the question is whether counsel's

failure to perfect a direct appeal in derogation of a defendant's actual request is presumptively

prejudicial when the defendant has executed a valid waiver of the right to appeal and collateral

review.

Relying on Flores-Ortega, a number of circuit courts have held that counsel must always file an appeal when requested, even where the defendant has entered into a plea agreement waiving some or all of his appeal and collateral review rights. See, e.g., United States v. Tapp, 491 F.3d 263, 265-66 (5th Cir. 2007); United States v. Poindexter, 492 F.3d 263, (4th Cir. 2007); Campusano v. United States, 442 F.3d 770, 772-77 (2d Cir. 2006); United States v. Sandoval-Lopez, 409 F.3d 1193, 1195-99 (9th Cir. 2005); United States v. Garrett, 402 F.3d 1262, 1265-67 (10th Cir. 2005); Gomez-Diaz v. United States, 433 F.3d 788, 790-92 (11th Cir. 2005). These cases, however, fail to recognize that the defendant in Flores-Ortega did not waive any appeal rights. Because there was no waiver in that case, the defendant had a statutory right to appeal his criminal conviction under 18 U.S.C. § 3742. If instructed to do so, counsel has an obligation to file a notice of appeal regardless of whether the appeal would have had merit. Flores-Ortega, 528 U.S. at 477. The Supreme Court characterized the obligation to file an appeal under such circumstances as a "purely ministerial" task. Id.

It is well established, however, that a criminal defendant may waive any statutory or constitutional right so long as the waiver is knowing and voluntary. See United States v. Coker, 514 F.3d 562, 573 (6th Cir. 2008). In this case, Morales waived her right to appeal or collaterally attack any sentence within or below the guideline range. It would be illogical to hold that counsel's failure to file a notice of appeal presumptively prejudiced Morales when she had no right to appeal. This Court agrees with others holding that a defendant's complete waiver of the right to appeal or collaterally attack a conviction and sentence rebuts any presumption of prejudice stemming from counsel's failure to file a notice of appeal when instructed to do so. See United States v. Arevalo, No. 5:07-153-JMH, 2010 WL 5391459, *2 (E.D. Ky. Dec. 22, 2010). In the face of a valid waiver,

13

counsel's decision to file a notice of appeal when instructed to do so is no longer a purely ministerial task. Nunez v. United States, 546 F.3d 450, 454-56 (7th Cir. 2008) ("Once a defendant has waived his right to appeal not only in writing but also in open court under Rule 11(b)(1)(N), the sixth amendment does not require counsel to disregard the waiver."). Counsel, therefore, must exercise judgment in deciding whether to file an appeal when requested to do so by a client who has waived that right. Accordingly, the Strickland analysis applies, and the defendant must show both objectively deficient performance and prejudice. Id. at 456. Morales has not done either in this case.

Moreover, because Morales's failure to appeal claim does not go to the validity of her guilty plea, it falls within the scope of her collateral attack waiver and is barred. In this regard, the Court agrees with the Third Circuit that a waiver of collateral review blocks a Flores-Ortega claim regardless of whether counsel was obligated to file a direct appeal. United States v. Mabry, 536 F.3d 231, 239-42 (3d Cir. 2008).

Alternatively, the Court would deny Morales's claim because she has failed to demonstrate that she actually instructed her attorney to file an appeal. Morales and her former attorney have submitted competing affidavits addressing the claim. Morales states that

> on July 12, 2010, after the sentencing hearing had concluded, attorney Cross apologized for not getting me the (54) month sentence she said U.S. Attorney verbally promised her I would receive for agreeing to cooperate against Tyrone Tanks. She said she was going to appeal my sentence and I told her I wanted her to appeal my case.

[R. 79-2]. Morales also claims that Ms. Cross did not respond to letters or phone calls from family members regarding the status of the case on appeal. [R. 79-1at 3]. Morales has not provided any affidavits from the family members who allegedly attempted to contact Cross.

14

Ms. Cross disputes this account, stating that she spoke with Morales and her family immediately after the sentencing hearing. After discussing the likelihood of success of an appeal, Morales advised Ms. Cross that she did not want to file an appeal. [R. 88-1 at 1]. Furthermore, Ms. Cross states "that at no time did Ms. Morales ever indicate to me in any manner that she intended or desired to appeal her sentence." [Id. at 2]. Remarkably, on July 13, 2010, Cross mailed a letter to Morales informing her of her right to appeal and stating that if she did wish to appeal, to notify Cross immediately before the deadline. [R. 88-2]. If Morales chose not to appeal, she was instructed to sign an enclosed waiver and mail it back to Cross. [Id.]. The document, entitled "Waiver of Appeal", was in fact signed by Morales and states that "[a]fter consultation with my attorney, I understand the sentence imposed in my case was lawful and I do not wish to appeal." [Id.].

Morales's Flores-Ortega claim is rebutted by (1) her signed plea agreement waiving the right to appeal any sentence within or below the guidelines, (2) the "Waiver of Appeal" signed by Morales and mailed to counsel following the sentencing hearing, and (3) counsel's sworn affidavit stating that neither Morales nor her family members asked for an appeal to be filed. Morales's claim is also belied by the fact that any appeal of her sentence based on an alleged promise of a specific sentence would have been frivolous in light of the thorough and complete Rule 11 colloquy conducted by the Court.[1] Considering this overwhelming evidence, the Court concludes that an

---

[1]THE COURT:    Other than what's contained in the plea agreement or the supplement, has anyone else made any promises to you to persuade you or convince you to enter into the plea agreement?

DEFENDANT:    No, Your Honor.

THE COURT:    Has anyone told you that you would receive a specific sentence in exchange for entering a plea of guilty to Counts 2 and 3?

evidentiary hearing is not necessary to find that Morales did not provide her counsel with express instructions to file an appeal.  Other courts have agreed on similar facts that a trial court reviewing a § 2255 motion is not required to conduct an evidentiary hearing.  See Cummings v. United States, 84 Fed. Appx. 603, 605 (6th Cir. 2003)(affirming denial of § 2255 motion where district court credited trial counsel's affidavit stating that defendant had not asked him to file appeal); Odom v. United States, 229 F.3d 1153, 2000 WL 1175598, *3 (6th Cir. 2000) (table); Coleman v. United States, No. 1:03-cr-231, 2009 WL 1393323, *10 (E.D. Tenn. May 18, 2009) (one reason counsel's affidavit was found to be credible was the lack of viable, nonfrivolous grounds for defendant to take a direct appeal); United States v. Walls, No. 2:05-cr-92-WOB, 2008 WL 927926, *9-11 (E.D. Ky. Apr. 4, 2008) (crediting counsel's affidavit that defendant did not request a direct appeal); Garner v. United States, No. 4:03-cr-8, 2006 WL 2585066, *9 (E.D. Tenn. Sept. 5, 2006) (finding that affidavits of defense counsel were more credible than defendant's own self-serving affidavit).  "A petitioner's self-serving statements in an affidavit that are contradicted by a credible version of events in an affidavit from his trial counsel may be incredible as a matter of law."  Walls, 2008 WL 927926 at *12 (citing Gibson v. United States, No. CV–06–5740, 2007 WL 210417, *4 (E.D.N.Y. Jan. 25, 2007)

## V.  CONCLUSION

Morales's remaining claims are that counsel performed ineffectively by failing to object to the calculation of her criminal history category and that the Court denied her due process by failing to allow her the opportunity to object to the sentence imposed.  Because neither claim touches on

---

DEFENDANT:              No, Your Honor.

[R. 84 at 9-10].  Morales is bound by her responses to the Court's inquiry during the Rule 11 proceedings.  See Baker v. United States, 781 F.2d 85, 90 (6th Cir. 1986).

16

the validity of Morales's guilty plea, both claims clearly fall within the scope of the collateral review waiver. Accordingly, it is RECOMMENDED that the Defendant's motion to vacate, set aside, or correct her sentence [R. 79] be DENIED because all of the claims asserted are either without merit or barred by a valid waiver of the right to collateral attack.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Arn, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Signed March 29, 2012.



Signed By:

*Edward B. Atkins*

United States Magistrate Judge

17